# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 3:05-0203** |
| | | **CIVIL NO. 3:12-0207** |
| **VERSUS** | * | **JUDGE BRADY** |
| **CHRISTOPHER R. WILLIS** | * | **MAGISTRATE JUDGE HILL** |

## <u>REPORT AND RECOMMENDATION</u>

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by petitioner, Christopher R. Willis ("Willis"). [rec. doc. 151].  The Government has filed a Memorandum in Opposition.  [rec. doc. 161].   Petitioner is incarcerated at the Federal Correctional Institution in Pollock, Louisiana.

In the instant motion to vacate, petitioner asserts several claims for relief including a claim that he received ineffective assistance of counsel because his attorney, Michael Sean Walsh ("Walsh"), failed to file a notice of appeal on his behalf. [1]

For the following reasons, **IT IS RECOMMENDED** that the **Clerk REINSTATE** petitioner's judgment of conviction and sentence on the Court's docket as

---

[1] Petitioner also asserts the following grounds for relief: (1) that his guilty plea to Count Two, intimidating and threatening a witness, was not knowingly and voluntarily entered because petitioner's counsel failed to inform him that the plea agreement contained an admission that petitioner used physical force against the witness; and (2) that his counsel was ineffective for the following reasons: (a) failing to file a motion to dismiss the indictment on statutory speedy trial grounds; (b) failing to file a motion to dismiss the indictment on Sixth Amendment speedy trial grounds; (c) failing to prevent the government from re-opening the motion to suppress evidentiary hearing; (d) failing to seek suppression of petitioner's confession on grounds that the confession was involuntary; (e) failing to challenge a sentencing enhancement based on "physical use and restraint"; and (f) failing to object to a two level enhancement for possession of a firearm in connection with a drug trafficking crime.

of **August 30, 2013**, that date representing the date from which the time for filing a notice of direct appeal shall run.

     **IT IS FURTHER RECOMMENDED** that the instant petition be **DISMISSED WITHOUT PREJUDICE**.

## STATEMENT OF CLAIM

     On June 10, 2009, pursuant to a plea agreement, petitioner pled guilty to Counts One, Two and Four of a Superceding Indictment charging petitioner with conspiracy with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, intimidating a witness in violation of 18 U.S.C. § 1512(b)(3) and intimidating a witness in violation of 18 U.S.C. § 1512(b)(1).  [rec. docs. 100 and 101].  In his Plea Agreement, petitioner waived the right to appeal his conviction and sentence directly or collaterally, reserving the right to appeal (1) any punishment imposed in excess of the statutory maximum, (2) any punishment that was an upward departure under the guidelines and (3) any punishment above the applicable guidelines range.  Petitioner also reserved his right to present claims of ineffective assistance of counsel.  [rec. doc. 101].

     Following preparation of a Pre-Sentence Investigation Report and various post-plea motions, on March 24, 2011, petitioner was sentenced within the statutory and applicable Guidelines range to 300 months imprisonment on Count One and 120 months imprisonment on Counts Two and Four, respectively, the sentences to run concurrently.[2]

---

[2]In determining petitioner's sentence, the Court granted petitioner a decrease in his total offense level for his acceptance of responsibility and additionally granted the government's Motion under § 5k1.1 of the Sentencing Guidelines, thereby resulting in an applicable Guidelines range of 262 to 327 months imprisonment. *See* rec. doc. 148, pg. 12.

2

[rec. docs. 145, 146, 142 and 148, pgs. 12-13].  Judgment was entered on the Court's docket on April 5, 2011.

The record reveals that after imposing petitioner's sentence, the Court noted that petitioner's Plea Agreement contained a waiver of appellate rights.  The Court nevertheless advised petitioner of his right to appeal his conviction and sentence and the time limitation for filing a written notice of appeal.  In response, petitioner indicated that he understood.  [rec. doc. 148, pg. 14].

The instant § 2255 motion was signed by petitioner on April 3, 2012 and was filed on April 9, 2012.  In his Motion, petitioner alleged that at the conclusion of the sentencing hearing, he told his attorney, Walsh, that he wanted to appeal his sentence.  In response, Walsh allegedly promised that they would discuss the matter further at a later time.  However, Walsh allegedly never met with petitioner and failed to file a Notice of Appeal on his behalf.

Because there was no competent evidence in the record regarding what transpired after sentencing, because the record did not conclusively show whether petitioner did, in fact, request Walsh to file a notice of appeal, whether, notwithstanding petitioner's appellate waiver, Walsh consulted with petitioner about the advantages and disadvantages of taking an appeal (while making a reasonable effort to discover petitioner's wishes), and finally, because the record was silent as to whether there was a reasonable probability that petitioner would have taken an appeal but for counsel's alleged failure to file a notice of appeal, an evidentiary hearing on this issue was conducted before the undersigned on July

3

9, 2013. [*See* rec. doc. 169].  CJA panel attorney John Harvey Craft was appointed to represent petitioner at the hearing. [rec. doc. 172].

Testifying at the hearing were petitioner's step-father, Randall Dupuis, the mother of petitioner's daughter, Shannon Culpepper, petitioner, Walsh and Assistant Federal Public Defender Richard M. Upton ("Upton").

Petitioner testified that he could not remember discussing the appellate waiver contained in his Plea Agreement with Walsh immediately prior to sentencing, although he knew that the waiver was part of his plea agreement.  He further testified that at the sentencing hearing, after the Court advised him of his right to appeal, petitioner asked Walsh if Walsh was going to file an appeal; Walsh allegedly responded, "yes."  However, after petitioner left the courtroom, petitioner never saw or spoke with Walsh again; Walsh allegedly refused to accept collect telephone calls from petitioner.

Both Randall Dupuis and Shannon Culpepper testified that after petitioner's sentencing hearing was concluded, Walsh exited the courtroom and, while in the hall, Walsh told them that he was going to file an appeal on petitioner's behalf.

Walsh testified that prior to petitioner's sentencing, he explained the waiver of appellate rights contained in the Plea Agreement to petitioner during meetings with petitioner in the Marshal's Office and at the Ascension Parish Jail.  During the latter visit, Walsh was accompanied by Upton, who confirmed this testimony.

Walsh testified that, after sentencing, petitioner never told him that he, Willis, wanted to appeal.  Walsh explained that he believed that petitioner was relieved because

4

petitioner had received a lighter sentence than he had expected. Walsh nevertheless told petitioner that he could appeal and that petitioner should let him know if he wanted to appeal. Walsh testified that he had no communication with petitioner after petitioner left the courtroom and began serving his sentence.  Walsh denied telling petitioner's family members that he would file an appeal.

At the conclusion of the testimony, the court informed the parties that the matter would be considered submitted and taken under advisement.  This Report follows.

## LAW AND ANALYSIS

**Ineffective Assistance of Counsel – Failure to a File Notice of Appeal**

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029 (2000), the United States Supreme Court set forth the standards applicable to a claim of ineffective assistance of counsel due to counsel's failure to file a notice of appeal. When discussing the first *Strickland* inquiry, whether counsel's performance was deficient, the Court reaffirmed that a "lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Roe*, 120 S.Ct. at 1035 *citing Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969) and *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999). Moreover, the Court reaffirmed that "at the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id. citing Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

For cases that lie between those poles, that is, where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, an antecedent question must be answered, that is, "whether counsel in fact consulted with the defendant about an appeal." *Id*.  The term "consult" was defined in this context as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*.  Thus, the court held that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe,*120 S.Ct. at 1035.

With respect to the element of prejudice, the Court said that a defendant must demonstrate that, but for counsel's deficient performance, he would have appealed. Accordingly, "when counsel's deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484.  No showing of likely success on appeal is required as a pre-requisite to *habeas* relief.  *See Roe*, 528 U.S. at 484 and 486;  *White v. Johnson*, 180 F.3d 648, 652-653 (5th Cir. 1999) (pre-*Roe* decision); *United States v. McMillen,* 96 Fed. Appx. 219, 221 (5th Cir. 2004).

The Fifth Circuit has held that *Roe* applies even when a defendant has waived his right to direct appeal and collateral review.  *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007); *United States v. Higgins*, 459 Fed. Appx. 412, 413 (5th Cir. 2012).  In such

circumstances, if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal whether or not he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of the waiver.  *Tapp*, 491 F.3d at 266.

Petitioner claims that this case falls within the first *Roe* scenario, that is, that he expressly told his attorney, Walsh, to appeal, but that Walsh failed to do so.  Petitioner's testimony is, to some extent, supported by the testimony of his step-father and mother of his child.  While petitioner testified at the hearing that Walsh agreed to file an appeal on petitioner's behalf, in his petition petitioner merely asserted that Walsh agreed to discuss an appeal with petitioner at a later date, but failed to do so.  In light of this discrepancy, the Court finds petitioner's testimony somewhat suspect.

Discounting petitioner's testimony at the hearing,  petitioner's claim would be categorized as falling within the third *Roe* scenario.  In such cases, the  antecedent question must be answered, specifically, "whether [Walsh] in fact consulted with [Willis] about an appeal."

Walsh testified that after petitioner's sentence was imposed, Walsh and petitioner had a brief discussion about taking an appeal in the Courtroom.  It is unclear to the undersigned whether this conversation rose to the level of the "consultation" required by

*Roe.* Specifically, the undersigned is unclear whether or not Walsh sufficiently advised petitioner "about the advantages and disadvantages of taking an appeal."[3]

Given the prior discussions between Walsh and petitioner regarding petitioner's waiver of his right to appeal, it may not have been unreasonable for Walsh not to have inquired further. Moreover, given the prior discussions between Walsh and petitioner, it is certainly plausible for Walsh to have reasonably understood that petitioner did not wish to appeal his sentence.

*Roe* holds that counsel's performance may be constitutionally ineffective if he fails to consult with his client about an appeal. However, if both petitioner and Walsh understood that no appeal would be taken because petitioner had waived his appellate rights, the undersigned would not hold that Walsh was ineffective for failing to "re-plow" that ground after sentence was imposed. That is the gist of Walsh's testimony, and the waiver of appellate rights contained in the Plea Agreement supports that position, at least in part.

Nevertheless, given the fact that petitioner's specific testimony is that he requested Walsh to appeal and the fact that Walsh did not engage in extensive discussions with petitioner after sentencing as to whether an appeal should be taken, and recognizing that

---

[3] *See also United States v. Rivas,* 450 Fed. Appx. 420, 424 (5th Cir. 2011) *quoting White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999) (to meet the *Roe* standard, "counsel must do more than simply give the defendant notice "that an appeal is available or advice that an appeal may be unavailing." Instead, counsel must advise the defendant "not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal."").

the law strongly favors appeals, the undersigned recommends that petitioner be granted a remedy herein.

**Remedy**

In *Roe*, the United States Supreme Court reaffirmed it's prior holdings regarding the proper remedy when a criminal defendant is deprived of a direct appeal as a result of his counsel's constitutionally deficient performance.  In such circumstances, the criminal defendant is entitled to a direct appeal. *Roe-Flores*, 120 S.Ct. at 1035 and 1039 *citing Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit . . . we hold that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.").

With respect to the procedure for implementing that remedy on a  § 2255 motion to vacate, the Fifth Circuit has set forth specific instructions.  Focusing on a claim of ineffective assistance of counsel due to counsel's failure to file a direct appeal on behalf of a criminal defendant, and noting that the other grounds raised within the § 2255 motion could be resolved on direct appeal, the Fifth Circuit instructed the district court as follows:

> [T]he § 2255 petition is to be dismissed without prejudice. Mack's judgment of conviction is then to be reinstated on the docket of the trial court as of

the date to be fixed by the trial court from which the time of the appeal shall run.

*Mack v. Smith*, 659 F.2d 23, 25-26 (5th Cir. 1981).

The Fifth Circuit has reaffirmed that procedure, holding the instructions in *Mack* to be "binding precedent." *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001). Noting the distinction between the statutory remedy set out in § 2255 and judicial remedy crafted in *Mack*, the Court articulated that the Fifth Circuit's judicial remedy of granting an out-of-time-appeal by re-entering the criminal judgment on the district court's docket provides the same result as the statutory remedy requiring the judgment be vacated and the defendant be re-sentenced.  *Id.* at 460.

Moreover, the court again noted that "part of the procedure for granting an out-of-time direct criminal appeal is dismissing the § 2255 motion without prejudice . . . ." *Id*.  *See also United States v. Rivas*, 450 Fed. Appx. 420, 429-430 (5th Cir. 2011) *citing West,* and *Mack, supra.* (instructing the district court to "re-enter the judgment of conviction to trigger the new time period for filing an appeal" and to dismiss without prejudice the defendant's § 2255 motion)*; United States v. Camargo*, 119 Fed. Appx. 670, 672 (5th Cir. 2005) *citing West*, 240 F.3d at 459-460 (instructing the district court to "reinstate the criminal judgment on the docket in order for [the defendant] to file an out-of-time appeal" and to dismiss without prejudice the defendant's § 2255 motion); *United States v. Martinez-Carrillo*, 91 Fed. Appx. 353, 354 (5th Cir. 2004) (same).

In light of the above, petitioner's judgment of conviction and sentence should be re-instated on the docket of this Court on a date to be fixed[4], from which the time for filing a Notice of Appeal shall run, and that the instant petition should be dismissed without prejudice.

### CONCLUSION

For the foregoing reasons;

**IT IS RECOMMENDED** that the **Clerk REINSTATE** petitioner's judgment of conviction and sentence on this court's docket as of **August 30, 2013**, that date representing the date from which the time for filing a notice of direct appeal shall run.

**IT IS FURTHER RECOMMENDED** that the instant petition be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame**

---

[4]The undersigned suggests August 30, 2013.

authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana this 15th day of July, 2013.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE